UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| JOHN ANTHONY, individually and, ) | | |
| on behalf of his wife, TERRI ANTHONY ) | | |
| Plaintiffs. ) | | |
| ) | | |
| v. ) | CIVIL ACTION NO.: | |
| ) | | |
| SULZER SPINE TECH, INC., ) | | |
| A Minnesota Corporation ) | JUDGE: | |
| ) | | |
| ) | SECTION: | |
| Defendants. ) | | |

**COMPLAINT AND JURY DEMAND**

Plaintiffs, John Anthony, individually and on behalf of his wife, Terri Anthony, hereby file this Complaint against Defendant SULZER SPINE TECH, INC.., a Minnesota Corporation., (hereinafter sometimes referred to "Defendant" or "Spine Tech"), respectfully showing the Court the following:

**JURISDICTION**

1. All of the relevant conduct of the parties occurred in the State of Louisiana, were initiated within the State of Louisiana, or were finalized within the State of Louisiana.

2. **Diversity of Citizenship.** This action is brought pursuant to 28 U.S.C. § 1332, for any act where the matter in controversy exceeds the sum and value of $75,000, exclusive of interest and costs, and is between citizens of different States.

**PARTIES**

3. John Anthony and Terri Anthony (hereinafter, "Plaintiffs"), are individual citizens of the United States and reside in Jefferson Parish, State of Louisiana.

4. Based upon information and belief, Plaintiffs state the defendant corporation, Sulzer Spine Tech, Inc. (hereinafter, the "Defendant" or "Spine Tech") is a corporation conducting business in the United States, and was at the time relevant to the events complained of herein developed and manufactured the BAK Interbody Fusion System.

## NATURE OF THE CASE

5. Plaintiff, John Anthony, was involved in an automobile accident on April 20, 2000.

6. Plaintiff, Terri Anthony, is John Anthony's husband.

7. The automobile accident resulted in Plaintiff, John Anthony, suffering a low back injury and left leg injury on April 20, 2000.

8. Plaintiff was referred to Dr. K. E. Vogel at Memorial Medical Center.

9. After plaintiff found no relief from extensive conservative care, Dr. Vogel recommended Posterior Lumbar Interbody Cage Fusion L2-L3 and L3-L4, Bilateral; Microsurgical Diskectomy L20L3, L3-L4, Bilateral; Medial Branch Neurotomy L2-L3,L3-L4, Bilateral; and Lumbosacral Epidural Block.

10. Dr. Vogel performed these procedures on September 13, 2000 at Memorial Medical Center.

11. In 1996, the U.S. Food and Drug Administration (hereinafter, the "FDA") issued to Defendant Spine Tech a Preliminary Market Analysis (hereinafter "PMA")

authorizing the Defendant to market its BAK Interbody Fusion System (hereinafter the "cage").

12. Later that year, the case was modified once again the FDA approve its use through a PMA. The modified cage was marketed as the BAK Proximity Cage.

13. In 1997, the cage underwent a second modification and the FDA approve of its use for Degenerative Disk Decease (hereinafter "DDD"). The FDA approve of its marketing name of BP/Lordotics device.

14. As neurosurgery goes, Dr. Vogel believed the cage to be in advances in medical science and that the cage would replace femoral implant fusions in all back fusion procedures.

15. Based upon information and belief, the Defendant Spine Tech failed to convey the limitations of the FDA approval to Dr. Vogel.

16. The cage was developed and authorized for limited uses: the cage is specifically authorized for use in DDD cases, in cases where stenosis already exists, where the back injury is so severe that interbody fusion will provide relief in cases where neurosurgery is critical, having been supported by a long history of radiological reports.

17. Plaintiff has been experiencing pain since the BAK Interbody Cage Infusion was implanted.

18. Based upon information and belief, at the time of the manufacturing, compounding, packaging, and or distribution, the case was an unavoidably unsafe product in that it was not properly prepared, and accompanied by proper directions and warning.

3

19. In the history of the cage's manufacturing, there have been at least two manufacturers, whose names and autonomy in production are unknown to the Plaintiffs at this time, but are known to Defendant Spine Tech. As the names are discovered, this allegation may be amended as appropriate.

20. In the packaging, the Defendant Spine Tech provided inaccurate, incomplete, misleading, or fraudulent information furnished by the Defendant Spine Tech in connection with FDA approval. Material omissions are as equally fraudulent as misrepresentations.

21. Dr. Vogel may not have recommended surgery had he been made aware that Defendant Spine Tech was not in compliance with FDA requirements.

22. Since the surgery, Plaintiff has suffered greatly from the procedure for which was avoidable.

23. Due to the above described conduct and the deprivations of the rights guaranteed under the Laws of the State of Louisiana and of the United States this complaint followed.

## COUNT I – STRICT PRODUCT LIABILITY

24. Plaintiff incorporates by reference paragraphs 1 through 23 of this Complaint as if fully set forth herein and further alleges as follows.

25. Plaintiff alleges that the cage interboy fusion system has a defect or a defective condition in the product which made the product unreasonably dangerous to the user or consumer causing severe bodily injury.

26. Plaintiff further alleges that the cage interboy fusion system is an unavoidably unsafe product.

27. At the time of production, compounding, packaging or distribution, Defendant Spine Tech or its manufacturer provided directions or warnings that were inaccurate, incomplete, misleading, or fraudulent in connection with FDA approval. Material omissions are as fraudulent as actual misrepresentations.

28. The Defendant Spine Tech was obliged to provide adequate direction and warning to consumers concerning its products, including the cage interboy fusion system.

29. Based upon information and belief, the Defendant Spine Tech failed to provide Dr. Vogel adequate direction and warning, which led Dr. Vogel into performing surgery on Plaintiff contrary to FDA approval.

30. As a direct and proximate result of Defendant Spine Tech's conduct, Plaintiff has suffered severely for which she should be compensated.

31. As a direct and proximate results of the Defendant Spine Tech's conduct, Plaintiff has suffered special damages, including avoidable medical expenses.

32. As a direct and proximate result of the Defendant Spine Tech's conduct, Plaintiff has suffered special damage, including lost wages.

33. As a direct and proximate result of the Defendant Spine Tech's conduct, Plaintiff has suffered emotional distress resulting in damages therefrom.

34. Plaintiff is entitled to other equitable damages, and other future pecuniary losses.

35. Plaintiff is entitled to punitive and exemplary damages for reckless indifference toward Plaintiff and his rights.

36. Plaintiff is entitled to an award of all reasonable attorney's fees and costs, including expert witnesses pursuant to 28 U.S. C. §2412 and other pendant state and federal provisions.

## COUNT II – NEGLIGENCE

37. Plaintiff incorporates by reference paragraphs 1 through 36 of this Complaint as if fully set forth herein and further alleges as follows.

38. At all times relevant, it was the duty of Defendants to exercise due care in designing, testing, manufacturing, distributing, marketing, promoting, and selling the Wright Cup such that it would be reasonably safe for its intended use. O.C.G.A. § 51-1-2.

39. Sulzer knew or had reason to know that Plaintiff as a member of the general public for whose use the BAK Interbody Cage Infusion was placed into interstate commerce, and who would be likely to use the BAK Interbody Cage Infusion in a manner described in this Complaint.

40. Wright knew or reasonably should have known of the danger associated with the manner and circumstances of Plaintiff's foreseeable use of the BAK Interbody Cage Infusion, which dangers would not be obvious to the general public.

41. As a direct and proximate result of one or more of the foregoing wrongful acts or omissions by Defendants, the BAK Interbody Cage Infusion caused Plaintiff to suffer and sustain injuries of a permanent nature.  Plaintiff was caused to and will in the future be caused to endure pain and suffering in boy and mind. In an endeavor to cure his said injuries, Plaintiff was caused to and will in the future be caused to expend money for medical care.  Furthermore, Plaintiff was unable to and will in the future be unable to attend to his normal affairs and duties for an indefinite period of time.

42. Plaintiff is entitled to recover compensatory damages against Defendants for negligence in an amount to be proved at trial, together with costs of this action.

## COUNT III – BREACH OF WARRANTY

43. Plaintiff incorporates by reference paragraphs 1 through 42 of this Complaint as if fully set forth herein and further alleges as follows.

44. Plaintiff is currently not in possession of any documents relating to representations, warnings and/or communications made by Defendants in this action. Plaintiff reserves the right to present evidence in support of this claim which is not presently in his possession, but which is not necessarily limited to: instruction for use manuals; all written material or information provided on and/or within any and all packaging associated with Plaintiff's device; manufacturer's labels, package inserts, Adverse Event Reports; clinical trial data, medical literature; medical research finding and opinions; medical publications; advertisements; sales, prescription and adverse event report databases; and communications from Defendants in this action, including said Defendants' employees, officers, directors, agents, representatives, contractors and business associates, to the public, medical community, Plaintiff's prescribing physician, and Plaintiff. Plaintiff is not in possession of documents as described herein, however, upon information, knowledge, and belief, Plaintiff believes the documents, instruments, and/or evidence stated above are in the possession of Defendants.

45. At the time Defendant marketed, sold, and/or distributed the BAK Interbody Cage Infusion, it knew that the hip device was intended for human use.

46. At the time Defendant marketed, sold, and/or distributed BAK Interbody Cage Infusion, Plaintiff was a foreseeable user of the device.

47. At the time Defendant marketed, sold, and/or distributed the BAK Interbody Cage Infusion, it expressly and/or impliedly warranted that the hip, including all of its component parts, were safe and merchantable for their intended use. O.C.G.A. §§ 11-2A-210, 11-2-314.

48. Plaintiff and his implanting physician reasonably relied upon the representations that the BAK Interbody Cage Infusion was of merchantable quality and safe for its intended uses.

49. Plaintiff used the BAK Interbody Cage Infusion for its intended purpose.

50. Contrary to their express and implied warranties, at the time Defendants marketed, sold, and/or distributed the BAK Interbody Cage Infusion, it was not of merchantable quality or safe for its intended use as described above.

51. As a direct and proximate result of one or more of the foregoing wrongful acts or omissions by Defendants, the BAK Interbody Cage Infusion caused Plaintiff to suffer and sustain injuries of a permanent nature. Plaintiff was caused to and will in the future be caused to endure pain and suffering in body and mind. In an endeavor to cure his said injuries, Plaintiff was caused to and will in the future be caused to expend money for medical care. Furthermore, Plaintiff was unable to and will in the future be unable to attend to his normal affairs and duties for an indefinite period of time.

52. Plaintiff is entitled to recover compensatory damages against Defendants for breach of warranty in an amount to be proven at trial, together with costs of this action.

## COUNT IV – NEGLIGENT MISREPRESENTATION

53. Plaintiff incorporates by reference paragraphs 1 through 52 of this Complaint as if fully set forth herein and further alleges as follows.

54. To prove negligent misrepresentation, the Plaintiffs must prove the following elements: (a) The defendant's negligent supply of false information to a foreseeable person, known or unknown; (b) Such person's reasonable reliance upon that false information; and (c) Economic injury proximately resulting from such reliance. *Marquis Towers, Inc. v. Highland Group,* 593 S.E.2d 903 (Ga. Ct. App. 2004).

55. At all times material hereto, Defendants misrepresented that the BAK Interbody Cage Infusion in question was safe for its intended use. Defendants knew or should have known of the use for BAK Interbody Cage Infusion was intended and the serious risks and dangers associated with such use of the BAK Interbody Cage Infusion.

56. Defendants owed a duty to treating physicians and to the ultimate end-users of the BAK Interbody Cage Infusion, including Plaintiff John Anthony, to accurately and truthfully represent the risks of the BAK Interbody Cage Infusion. Defendants breached that duty by misrepresenting and/or failing to adequately warn Plaintiff John Anthony, and the public about the risks of the BAK Interbody Cage Infusion, which Defendants knew or in the exercise of reasonable diligence

should have known. These risks include, but are not limited to, the failure rates, the metal debris, and the likelihood of painful and debilitating revision surgery.

57. As a direct and proximate result of Defendant's wrongful conduct, Plaintiff John Anthony sustained and will continue to sustain severe physical injuries, severe emotional distress, mental anguish, economic losses, and other damages.

58. Plaintiff John Anthony is entitled to recover compensatory damages for negligent misrepresentation from Defendants in an amount to be proven at trial, together with costs of this action.

## COUNT V – FRAUD AND SUPPRESSION AGAINST DEFENDANTS

59. Plaintiffs incorporate by reference paragraphs 1 through 58 of this Complaint.

60. Defendants owed Plaintiff John Anthony a duty to disclose the known risks and/or defects in the BAK Interbody Cage Infusion as set forth in this Complaint. O.C.G.A. 23-2-53

61. Those risks and/or defects were material facts upon which Plaintiff John Anthony would have reasonably relied is making a decision as to whether to consent to the implant of the BAK Interbody Cage Infusion, had they been disclosed.

62. With full knowledge of said risks and/or defects, Defendants consciously, deliberately, and intentionally breached their duties to Plaintiff John Anthony by failing to disclose those material facts to Plaintiff John Anthony O.C.G.A. § 51-6-2.

63. As a direct and proximate consequence of said suppression, Plaintiff John Anthony sustained and will continue to sustain severe physical injuries, severe emotional distress, mental anguish, economic losses and other damages.

64. Plaintiff John Anthony is entitled to recover compensatory damages for fraud and suppression against Defendants in an amount to be proven at trial, together with costs of this action.

## **COUNT VI – CIVIL CONSPIRACY AGAINST DEFENDANTS**

65. Plaintiff incorporates by reference paragraphs 1 through 64 of this Complaint.

66. To recover damages for a civil conspiracy claim, a plaintiff must show that two or more person, acting in concert, engaged in conduct that constitutes a tort; absent the underlying tort, there can be no liability for civil conspiracy. *Golden Atlanta Site Development, Inc. v. Nahai*, 683 S.E.2d 166 (Ga. Ct. App. 2009).

67. Each of the Defendants had a duty to Plaintiff John Anthony to disclose the known risks and/or defects in the BAK Interbody Cage Infusion as set forth in this Complaint.

68. Those risks and/or defects were material facts upon which Plaintiff John Anthony would have reasonably relied in making a decision as to whether to consent to the implant of the BAK Interbody Cage Infusion, had they been disclosed.

69. The Defendants have conspired together to actively suppress these material facts from Plaintiff John Anthony.

70. The foregoing combination of two or more persons was formed for the purpose of injuring Plaintiff John Anthony.

71. Plaintiff John Anthony is entitled to recover compensatory damages for civil conspiracy against the Defendants in an amount to be proven at trial, together with costs of this action.

## **COUNT VII – PUNITIVE DAMAGES AGAINST DEFENDANTS**

72. Plaintiff incorporates by reference paragraphs 1 through 71 of this Complaint.

73. The acts of the Defendants showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences.

74. Plaintiff John Anthony is entitled to punitive damages against Defendants in an amount to be proven at trial, without any limitation, as set forth in O.C.G.A. § 51-12-5.1(e)(1).

Respectfully submitted this 14th day of November 2014.

Respectfully submitted,

s:/ John D. Sileo
JOHN D. SILEO (LA. BAR NO.: 17797)
320 N. Carrollton Avenue, Suite 101
New Orleans, Louisiana 70119
TEL: 504-486-4343
FAX: 504-297-1249